RE: AVERAGE DAILY ATTENDANCE REQUIREMENTS
ATTORNEY GENERAL HENRY HAS AUTHORIZED ME TO RESPOND TO YOUR RECENT REQUEST FOR INFORMAL ADVICE REGARDING THE CURRENT REQUIREMENTS OF 70 O.S. 18-113.1 (1989). I HAVE REVIEWED THE BRIEF ON THIS SUBJECT TRANSMITTED BY YOUR LEGAL COUNSEL, AND GENERALLY AGREE WITH HER COMMENTARY. AS TO ONE AREA OF ADMINISTRATIVE POLICY THAT WAS APPARENTLY IMPLEMENTED LONG BEFORE YOUR TENURE AS STATE SUPERINTENDENT BEGAN, I FEEL THAT AN ALTERATION IS APPROPRIATE.
THE PARAMETERS OF THIS QUESTION MUST BE VIEWED IN LIGHT OF ATTORNEY GENERAL OPINION NO. 78-221, TOGETHER WITH THE CURRENT VERSION OF SECTION 18-113.1. A PREDECESSOR VERSION OF SECTION 113.1, 70 O.S. 113 (1978), WAS REVIEWED IN ATTORNEY GENERAL OPINION NO. 78-221, AND THE TWO STATUTES ARE SIGNIFICANTLY DIFFERENT IN SOME AREAS. HOWEVER, AS YOUR ATTORNEY HAS POINTED OUT, MUCH OF THE BASIC RATIONALE OF THE OPINION IS STILL VALID, AND THE NEW STATUTE GOVERNING THIS AREA IS PROPERLY CONSTRUABLE BY USE OF PART OF THE RATIONALE OF ATTORNEY GENERAL OPINION NO. 78-221.
IN 1978, FORMER ATTORNEY GENERAL DERRYBERRY REVIEWED THE PROVISIONS OF STATE LAW WHICH CONDITIONED THE RECEIPT OF STATE AID TO PUBLIC SCHOOL DISTRICTS UPON THE DISTRICTS' LIMITING AVERAGE CLASS SIZES. THESE PROVISIONS WERE CONTAINED IN 70 O.S. 18-113. SECTION 18-113 WAS DIVIDED INTO TWO PARTS IN 1978. WITH REFERENCE TO GRADES 16, NO CHILD COULD BE COUNTED FOR ADA PURPOSES IF REGULARLY ASSIGNED TO A CLASS THAT INCLUDED MORE THAN 25 STUDENTS PER CLASS, OR PER TEACHER, IF MORE THAN ONE TEACHER WAS REGULARLY ASSIGNED TO THE CLASS. FOR GRADES 7-12, NO CHILD COULD BE INCLUDED FOR ADA PURPOSES IF REGULARLY ASSIGNED TO ANY CLASS THAT INCLUDED MORE THAN 36 STUDENTS PER CLASS, OR PER TEACHER IF MORE THAN ONE TEACHER WAS REGULARLY ASSIGNED TO THE CLASS. A MAJOR EXCEPTION TO THE GENERAL RULE FOR THIS SECOND LEVEL PROVIDED THAT CERTAIN SPECIFIED TYPES OF CLASSES (MUSIC, ETC), WERE NOT SUBJECT TO THE CLASS LIMITATION RULE.
THE ATTORNEY GENERAL HELD AS A BEGINNING REFERENCE POINT THAT THE TERMS "CLASS" AND "CLASSROOM" USED IN THE STATUTE INTENDED TO PLACE LIMITS ON THE NUMBER OF STUDENTS WHO COULD BE ASSIGNED TO ANY PARTICULAR CLASS (SUBJECT MATTER CLASS OR CLASSROOM). THERE WAS ONE EXCEPTION TO THIS GENERAL RULE THE LIMIT COULD BE CALCULATED ON A PER-TEACHER BASIS ONLY IF MORE THAN ONE TEACHER WAS REGULARLY ASSIGNED TO THE PARTICULAR SUBJECT MATTER CLASS OR CLASSROOM.
FOR STUDENTS ATTENDING GRADES 1 THROUGH 6, THE FORMULA REQUIRED THAT ALL CLASSES OF ANY KIND BE INCLUDED IN THE FORMULA CALCULATIONS. HENCE, THE ADA FIGURES FOR A GIVEN SCHOOL HAD TO INCLUDE EVERY TYPE OF CLASS BEING TAUGHT, WITHOUT REFERENCE TO THE SUBJECT MATTER BEING TAUGHT IN THAT CLASSROOM. ESSENTIALLY, ONE COULD CALCULATE THE ADA FIGURES MERELY BY TAKING THE TOTAL NUMBER OF STUDENTS IN THE GRADE BRACKET IN QUESTION, AND DIVIDING THAT FIGURE BY THE NUMBER OF CLASSES BEING TAUGHT. IT IS IMPORTANT TO AGAIN NOTE THAT THE NUMBER OF TEACHERS WAS DEEMED IRRELEVANT TO THE CALCULATION PROCESS, UNLESS THE SCHOOL REGULARLY ASSIGNED MORE THAN ONE TEACHER TO A CLASSROOM.
FOR GRADES 7 THROUGH 12, AN ENTIRELY DIFFERENT FORMULA WAS CALLED FOR, ACCORDING TO THE OPINION. CLASSES WHEREIN CERTAIN TYPES OF "NON-CORE" CURRICULA WERE BEING TAUGHT (MUSIC, ART, PHYSICAL EDUCATION, ETC.) WERE DECLARED BY THE LAW NOT TO BE SUBJECT TO THE ADA LIMITS. HOWEVER, A LATENT VAGUENESS WAS CREATED BY THE VERBIAGE OF THE LAW, NAMELY HOW TO FIGURE THE ADA FIGURES FOR THIS LEVEL OF STUDENTS. ATTORNEY GENERAL DERRYBERRY RESOLVED THIS QUESTION BY OPINING THAT "NON-CORE" CLASSES AND TEACHERS INSTRUCTING STUDENTS IN THESE "NON-CORE" CLASSES WERE NOT TO BE INCLUDED IN THE GRADES 7-12 CALCULATIONS AT ALL. NOT CLEARLY STATED IN THE OPINION, BUT AMPLY IMPLIED FROM A READING OF IT, WAS THE RATIONALE THAT THE LEGISLATURE, BY PLACING THESE ADA LIMITS ON SCHOOL DISTRICTS, HAD INTENDED TO ENFORCE LEGISLATIVE INTENT THAT SO-CALLED "CORE" CLASSES BE LIMITED IN SIZE AS AN EDUCATIONAL TOOL FOR THE BETTERMENT OF THE STUDENTS. TO USE A SIMPLE MATHEMATICAL FORMULA WHERE THE TOTAL NUMBER OF STUDENTS WAS DIVIDED BY THE TOTAL NUMBER OF TEACHERS GIVING INSTRUCTION IN THE SCHOOL (INCLUDING TEACHERS IN "NON-CORE AREAS") WAS IMPLIED TO WORK AGAINST THE LEGISLATURE'S GOAL.
TITLE 70 O.S. 18-113 WAS REPEALED IN 1985. IN ITS STEAD, THE LEGISLATURE ENACTED INTO LAW 70 O.S. 18-113.1. OKLA. SESS. LAWS 1985, C.329, 3, P. 1479. THIS AMENDED VERSION HAD A NEW FORMAT, VERY SIMILAR IN FORMAT AS OUTLINED IN THE SECOND PART OF 1978 VERSION OF THE LAW REVIEWED BY ATTORNEY GENERAL DERRYBERRY. THE ONLY CHANGES MADE IN THE LAW SINCE THAT TIME HAVE BEEN ALTERATIONS LOWERING THE PERMISSIBLE CLASS SIZES IN THE VARIOUS GRADES FROM TIME TO TIME. THE 1988 VERSION REQUIRES BASICALLY AS FOLLOWS:
"(TEST OF STATUTES)
THE FORMULA USED BY THE OKLAHOMA DEPARTMENT OF EDUCATION FOR MANY YEARS IS BASED UPON THE SECOND PORTION OF THE LANGUAGE OF A.G. OPIN. NO. 78-221, WITH ONE SIGNIFICANT EMBELLISHMENT. THE STATE DEPARTMENT USES A SYSTEM WHEREIN IT LOOKS AT THE NUMBER OF SO-CALLED "HOMEROOM" TEACHERS IN A GIVEN SCHOOL, AND DIVIDES THAT FIGURE INTO THE TOTAL NUMBER OF STUDENTS ATTENDING THE SCHOOL FOR EACH BRACKET OF STUDENTS INVOLVED (GRADES 1-3, 4-6, 7-9). TEACHERS WHO ARE NOT FORMALLY DESIGNATED "HOMEROOM" TEACHERS, REGARDLESS OF THE SUBJECT OF INSTRUCTION (INCLUDING "CORE" AREAS SUCH AS SPECIALIZED SCIENCE AND MATHEMATICS CLASSES) ARE NOT COUNTED AT ALL (RECALL THAT A.G. OPIN. NO. 78-221 ADVISED THAT ONE DOES NOT LOOK TO THE NUMBER OF TEACHERS AT ALL UNLESS MORE THAN ONE TEACHER IS REGULARLY ASSIGNED TO A CLASS).
THE TULSA PUBLIC SCHOOLS CURRENTLY EMPLOY A TEACHING INSTRUCTIONAL FORMAT THAT ENTAILS STUDENTS IN GRADES THROUGH 3 BEING SPLIT INTO TWO GROUPS. GROUP "A" ATTENDS "HOMEROOM" CLASSES IN THE MORNING, AND THEN ATTENDS "NONHOMEROOM" CLASSES IN THE AFTERNOON. GROUP "B" FOLLOWS JUST THE OPPOSITE SCHEDULE. SOME OF THESE NNON-HOMEROOM" CLASSES ARE NON-CORE CLASSES, AND SOME ARE "CORE" CLASSES TAUGHT BY TEACHERS WHO ARE NOT DESIGNATED "HOMEROOM" TEACHERS (SUCH AS TEACHERS SPECIALIZING SOLELY IN SPECIAL MATHEMATICS CLASSES). THIS TYPE OF FORMAT, WITH SOME VARIATIONS, IS USED WIDELY THROUGHOUT THE STATE, THE BROKEN ARROW AND PUTNAM CITY SCHOOL SYSTEMS BEING TWO OTHER EXAMPLES.
THE BASIC POSITION OF THE TULSA SCHOOL DISTRICT IS THAT SECTION 18-113.1 ONLY STATES THAT THE 6 ENUMERATED TYPES OF CLASSES ARE PERMITTED TO BE LARGER THAN THE ADA LIMITS, AND DOES NOT ADDRESS THE ISSUE OF WHETHER TO INCLUDE TEACHERS WHO TEACH "NON-CORE" CLASSES IN THE CALCULATIONS. THE DISTRICT CHAMPIONS A FORMULA THAT BASICALLY INVOLVES A SIMPLE MATHEMATICAL FORMULA WHERE THE TOTAL NUMBER OF STUDENTS IS DIVIDED BY THE TOTAL NUMBER OF TEACHERS, REGARDLESS OF AREA OF INSTRUCTION, TO ARRIVE AT ADA FIGURES. THIS METHOD IS BASICALLY THE METHOD THAT WAS RULED APPLICABLE IN 1978 AS TO GRADES 1 THROUGH 6. HOWEVER, THE LAW UPON WHICH THAT ADVICE WAS RENDERED NO LONGER EXISTS.
BOTH THE TULSA POSITION AND THE CURRENT STATE DEPARTMENT OF EDUCATION FORMAT ARE "TEACHER-DRIVEN", WHILE THE 1978 OPINION ADVISES THAT ONE DOES NOT REALLY LOOK TO THE NUMBER OF TEACHERS IN A GIVEN BRACKET OF GRADES, BUT, RATHER, TO THE AVERAGE NUMBER OF STUDENTS IN THE AVERAGE "CORE" CLASSROOM. IT ADVISES THAT THE ADA CALCULATION METHOD TO BE USED IS NOT "TEACHER-DRIVEN" AT ALL, BUT, RATHER, IS NCLASSROOM-DRIVEN" (I.E., WHAT IS THE AVERAGE NUMBER OF STUDENTS IN EACH "CORE" CLASS IN EACH BRACKET OF GRADES). THE NUMBER OF TEACHERS IN A GIVEN BRACKET OF GRADES IS UNIMPORTANT UNLESS THE SCHOOL REGULARLY ASSIGNS MORE THAN ONE TEACHER TO A CLASS. TO ILLUSTRATE HOW EACH SYSTEM WOULD IMPACT UPON A THEORETICAL BRACKET OF STUDENTS, THE FOLLOWING EXAMPLES ARE PROVIDED, USING A MYTHICAL SCHOOL BRACKET OF GRADES 1-3, WHEREIN THE SCHOOL BRACKET HAS 150 STUDENTS AND 8 TEACHERS. OF THE 8 TEACHERS, 5 ARE DESIGNATED AS "HOMEROOM" TEACHERS, AND 3 ARE SPECIALTY TEACHERS NOT DESIGNATED AS HOMEROOM TEACHERS (1 OF WHICH TEACHES ONLY SPECIALIZED MATHEMATICS COURSES FOR THE STUDENTS).
A. STATE DEPARTMENT OF EDUCATION METHOD 150 DIVIDED BY 5 = 30 ADA (21 ADA IS LIMIT)
B. TULSA METHOD
150 DIVIDED BY 8 = 18.75 ADA C. CORE CLASSROOM-DRIVEN METHOD (HOMEROOM TEACHER DESIGNATION IRRELEVANT) 150 DIVIDED BY 6 = 25 ADA
BY USING THE STATE DEPARTMENT'S METHOD, 9 STUDENTS PER CLASSROOM CANNOT BE INCLUDED FOR PURPOSES OF RECEIVING STATE AID, AND, THEREFORE, THE DISTRICT WOULD "LOSE" 30% OF THE STATE FINANCIAL AID THAT IT WOULD BE ENTITLED TO IF THERE WERE NO CLASS LIMITS ON ADA AT ALL. IF TULSA'S PREFERRED METHOD IS USED, IT COMES WITHIN THE MAXIMUM ADA LIMITS, AND LOSES NO MONEY. IF ALL "COREN CLASSES ARE COUNTED, TULSA WOULD STILL LOSE STATE AID, BUT THE 30% "LOSS" WOULD BE REDUCED TO A "LOSS" OF 15%, A SIGNIFICANT DIFFERENCE.
IT IS THIS FINAL METHOD OF CALCULATION THAT IS THE PROPER METHOD, AS POINTED OUT BY YOUR LEGAL COUNSEL AND I CONCUR WITH HER ADVICE TO YOU. WHILE IT IS ARGUABLE THAT THE ORIGINAL TERMS OF SECTION 113 WERE ONLY INTENDED TO EXEMPT NON-CORE CLASSES FROM ADA LIMITATIONS, THE LEGISLATURE IS PRESUMED TO BE AWARE OF CONSTRUCTIONS PLACED ON LAWS BY THE ATTORNEY GENERAL, AND THE FACT THAT IT HAS NOT CHOSEN TO DISAGREE WITH THE RATIONALE OF ATTORNEY GENERAL OPINION NO. 78-221, AND AMEND THE LAW ACCORDINGLY, IS INDICATIVE OF LEGISLATIVE AGREEMENT WITH THAT CONSTRUCTION. IT IS ONLY THE PAST PRACTICE OF NOT COUNTING TEACHERS WHO TEACH CORE CLASSES, BECAUSE THEY ARE NOT FORMALLY DESIGNATED AS HOMEROOM TEACHERS, THAT I HAVE DISAGREEMENT WITH.
THERE APPARENTLY ARE MEASURES PENDING IN THE LEGISLATURE THAT WOULD ALTER THE ADA REQUIREMENTS. SUCH A DECISION IS A LEGISLATIVE PREROGATIVE, AND THE CONTENTS OF THIS LETTER SHOULD NOT BE CONSTRUED BY ANY READER AS INDICATING AN EMBRACE OF ANY PARTICULAR POSITION AS TO WHAT SHOULD BE PUBLIC POLICY IN THIS AREA. RATHER, I HAVE MERELY REVIEWED THE LAW TO PROVIDE YOU WITH GUIDANCE AS TO ITS CURRENT STATUS. AGAIN, I APPRECIATE THE VERY COGENT AND HELPFUL BRIEF SUBMITTED BY YOUR LEGAL COUNSEL.
(MICHAEL SCOTT FERN)